IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| MS. SHANNON M. NOEL, | ) | |
| | ) | |
| Plaintiff, | ) | 2:25-CV-00572-CBB |
| | ) | |
| vs. | ) | |
| | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION[1]**
**ON ECF No. 11**

**Christopher B. Brown, United States Magistrate Judge**

## I.    Introduction

Plaintiff Shannon M. Noel ("Noel") filed her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (the "Act") on March 17, 2021.  Noel claims she became disabled beginning November 15, 2018.  After Noel's claims were initially denied, she sought reconsideration and a hearing before an Administrative Law Judge ("ALJ") which was held on January 30, 2024.  On April 12, 2024, the ALJ denied Noel's claim for disability benefits.  The Appeals Counsel declined to review the ALJ's decision and Noel filed a timely appeal with this Court.

---

[1]    All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

Presently pending before the Court is a motion for summary judgment by Noel. ECF No. 11.  The motion is fully briefed and ripe for consideration.

For the reasons that follow, Noel's motion for summary judgment is denied and the Commissioner's decision to deny benefits is affirmed.[2]

## II.    Factual Background

The following summary is limited to information that is relevant to the current appeal.

In her lifetime, Noel worked as a pharmacy technician and stopped working in 2016. ECF No. 5-2 at 43.  Noel alleges she became disabled on or about November 15, 2018 and was 37 years old when she applied for disability benefits. *Id*. at 18, 31. Noel has been diagnosed with a number of impairments including, *inter alia*: degenerative disc disease, chondrosis, migraines, obesity, status post concussion(s), depression, agoraphobia, anxiety, and posttraumatic stress disorder. *Id*. at 20.

Noel sought treatment from several medical professionals for these physical and mental health impairments. Among other medical testimony, there are several key medical opinions and evaluations in the present record related to Noel's impairments including from David Hutz, M.D., a state agency medical consultant, Fasial Roberts, Psy.D., a state agency psychological consultant, Marci Cloutier, Ph.D., a state agency psychological consultant, Dr. Mary Kovacik Eicher, a treating medical professional, and Katie Ulrich, NP-C, a treating medical professional. *Id*. at 28-31.  Noel's appeal concerns a medical opinion from her treating neurologist, Dr.

---

[2]    Frank Bisignano is substituted as the Defendant in this matter, pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. § 405(g).  The Clerk is directed to amend the docket to reflect this change.

Mary Kovacik-Eicher.  Dr. Kovacik-Eicher indicated in December 2023 that Noel experienced approximately four headaches per month, which were made worse with bright lights and noise. *Id*. at 29.  She indicated Noel's symptoms would interfere with attention and concentration 25% or more of the time and indicated Noel would be absent from work about two days per month. *Id*.

Noel's appeal also raises issues with her own subjective complaints related to her migraine and mental limitations symptoms. *Id*. at 24-25.  Noel maintains she has difficulty with, inter alia, completing tasks, following instructions, and with memory, concentration and understanding. *Id*. at 25.  She claims she had agoraphobia with panic attacks, had significant difficulties completing activities of daily living, needed help or reminders to take medicine and could not go out alone, had difficulties handling stress and changes in routine, and that she is sensitive to bright lights and can only view a screen for about 30 minutes. *Id*.

### III.    The ALJ's Decision

In his decision, the ALJ used the five-step sequential evaluation process as required.  This summary is limited to information relevant to the current appeal.

Step One:

At step one– whether the claimant is engaging in substantial gainful activity – the ALJ found Noel met the insured status requirements of the Act and had not engaged in substantial gainful activity since March 17, 2021. ECF No. 5-2 at 20.

Steps Two and Three:

At steps two and three of the sequential analysis – whether the claimant has medically determinable impairments that are severe and whether the claimant's impairments are so severe to meet or medically equal the criteria set forth in the regulations – the ALJ considered Noel's impairments and their severity. The ALJ found Noel had nine impairments which qualified as severe: degenerative disc disease, chondrosis, migraines, obesity, status post concussion(s), depression, agoraphobia, anxiety, and posttraumatic stress disorder. *Id.* at 20 (citing 20 C.F.R. § 416.920(c)).

Although documented, the ALJ found Noel's gastroparesis, irritable bowel syndrome, hypothyroidism, bilateral hearing loss, carpal tunnel syndrome and myositis of shoulder to be "non-severe" impairments alone or in combination as they were responsive to treatment, did not require significant medical treatment, caused no more than minimally vocationally relevant limitations, have not lasted or are expected to last for a continuous period of 12 months or expected to result in death, or have not been properly diagnosed by an acceptable medical source. *Id.* at 20-21.

As for Noel's physical impairments related to disorders of the skeletal spine, the ALJ found these impairments did not meet or medically equal the severity of criteria of Listing 1.15 when considered alone or in combination with other impairments. *Id.* at 21.

As for Noel's physical impairments related to the abnormality of a major joint(s) in any extremity, the ALJ found these impairments did not meet or

medically equal the severity of criteria of Listing 1.18 when considered alone or in combination with other impairments. *Id*. at 22.

As for Noel's physical impairment related to migraines, the ALJ found this impairment did not meet or medically equal the severity of criteria of Listing 11.02 and the parameters of SSR 19-4p. *Id*.  The ALJ found that the record did not establish the medical signs, symptoms laboratory findings or degree of functional limitation required to meet or equal the criteria of this or any listed impairment. *Id*.

As for Noel's physical impairment related to obesity, the ALJ found this impairment did not meet or medically equal the severity within the parameters of SSR 19-2p. *Id*.

As for Noel's mental impairments related to understanding, remembering, applying information, interacting with others, and adapting or managing oneself, the ALJ found she had a mild limitation. *Id*. at 22-23.  As for Noel's mental impairments related to concentrating, persisting or maintaining pace, the ALJ found she had a moderate limitation. *Id*. at 23.  The ALJ found that because Noel's mental impairments did not cause as least two "marked" limitations or one "extreme limitation," the "paragraph B" criteria were not satisfied. *Id*.  The ALJ also found that the evidence failed to establish the presence of "paragraph C" criteria. *Id*.  The ALJ stated

> [t]he limitations identified in the "paragraph B" criteria are not a
> residual functional capacity assessment but are used to rate the
> severity of mental impairments at steps 2 and 3 of the sequential
> evaluation process. The mental residual functional capacity
> assessment used at steps 4 and 5 of the sequential evaluation process

> requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

*Id.* at 23.

Because the ALJ determined Noel's severe impairments did not meet the requirements of the Listings, he determined Noel's residual functional capacity ("RFC"), meaning the limitations the impairments place on Noel's ability to perform gainful work activity.  The ALJ considered Noel's own testimony, her subjective complaints of her symptoms and the entire medical record with respect to migraines, musculoskeletal impairments, concussion and mental impairments.  The ALJ found that while the impairments could reasonably cause some symptomology, the objective evidence failed to document the presence of any impairment or combination of impartments that could reasonably be expected to result in symptoms of such a severity or frequency as to preclude the range of work described in the assigned RFC. *Id.* at 24-27.  The ALJ found that while Noel "stated she could only view a screen for about 30 minutes due to her migraines, she did not report this consistently in the medical records.  Rather, she indicated in May 2021 that she binge watched Star Trek; in March 2023 that she had been playing a game called 'Goodville" that benefitted her mental health; in May 2023 that she had been watching her favorite movies and shows; in August 2023 that she spent the weekend watching movies with her mother; and in October and November 2023 that she participated in 'Facebook dating[.]" *Id.* at 26.

Similarly, the ALJ found some of the supplied medical opinion evidence persuasive.

Beginning with Dr. Hutz's opinion, the ALJ found his assessment generally persuasive. *Id.* at 28. Dr. Hutz opined that Noel could perform light work with additional limitations such as use of a cane. *Id.* The ALJ agreed with this assessment finding it to be "generally consistent with the record" and "relevant evidence", but assigned additional limitations in consideration of Noel's subjective complaints. *Id.* at 28.

With respect to Dr. Khajuri's opinion, the ALJ found his assessment generally persuasive. Dr. Khajuri opined that Noel could perform light work with additional limitations to those suggested by Dr. Hutz. *Id.* Additionally, and with respect to a functional capacity evaluation from 2024 which placed Noel in the sedentary physical demand category with additional limitations, the ALJ found this assessment partially persuasive. *Id.* at 29. The evaluation placed Noel in this category with "use of a cane and limited squatting, kneeling, stair climbing, standing, and walking." The ALJ found this to be inconsistent with and without substantial support from the record as a whole which included evidence of "positive clinical and diagnostic findings," improvement with treatment, as well as driving, exercising, and socializing which suggested Noel is "less limited." *Id.*

With respect to Noel's medical provider, Dr. Kovacik Eicher's evaluation, the ALJ found it to be unpersuasive. *Id.* Dr. Eicher indicated that Noel experienced approximately four headaches per month which were made worse with bright lights

and noise, would interfere with her attention and concentration 25% or more of the time, and would be absent about two days per month. *Id.* The ALJ found this assessment unpersuasive because it was inconsistent with and without substantial support from the record as a whole. *Id.* The ALJ explained Noel's medical records showed her migraines improved with treatment, and her activities were not as limited as she reported. *Id.*

With respect to Dr. Roberts' opinion, the ALJ found his psychological assessment was generally persuasive. *Id.* at 29-30. Dr. Robert's opined that mild to moderate limitations in areas including concentration, interaction, and decision-making. *Id.* The ALJ found that Noel's medical records and written statements suggested she was less limited in light of her reported activities and treatment – for example that she socialized with friends, was active in online dating, and her "mental impairments improved with treatment." *Id.* at 30.

With respect to Dr. Cloutier's opinion, the ALJ found her psychological assessment was partially persuasive. *Id.* Dr. Cloutier opined that Noel had mild and moderate limitations with concentration and persistence but that she could "understand and apply basic information" sufficient to "complete tasks." *Id.* The ALJ noted that Noel was less limited than claimed for the same reasons given in response to Dr. Robert's findings. *Id.*

Lastly, with respect to NP-C Ulrich's opinion, the ALJ found this assessment unpersuasive. NP-C Ulrich opined that Noel could not "meet competitive standards" such that she was incapable of, among other things, "regular

8

attendance," being punctual, "completing a normal workday," and, as a result, was "severely limited." *Id*. at 31.  The ALJ found this to be inconsistent with and without substantial support from the record as a whole – that record evidence established Noel "mental impairments" improved with treatment, and she was "less limited" than was being suggested given her reported social activities. *Id*.

The ALJ assigned Noel the following RFC:

The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR [§] 416.967(a) but with the following other limits:

- can occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds;
- can occasionally balance and stoop;
- can never kneel, crouch, or crawl;
- must avoid concentrated exposure to extremes of light (such as direct sunlight and strobes), loud noise (such as heavy traffic and sirens), heat, cold, vibration, and hazards (such as inherently dangerous moving machinery and unprotected heights);
- limited to understanding, remembering, and carrying out detailed but uninvolved written or oral instructions;
- work duties and any changes must be explained, written and/or demonstrated and could be learned in 30 days or less;
- work must not have strict production rates such as assembly line work or hourly time quotas;
- is limited to frequent interaction with others; and
- requires constant use of an assistive device such as a cane for ambulation but is able to lift and carry with the other hand.

*Id*. at 23-24.

Step Four:

At step four – whether the claimant's impairments prevent her from performing her past relevant work – the ALJ found Noel could not perform her past relevant work. *Id.* at 31.

Step Five:

At step five - whether the claimant can perform any other work which exists in the national economy – the ALJ took into consideration Noel's age, education, work experience and RFC, and relying on testimony from the Vocational Expert ("VE"), found there are jobs that exist in significant numbers in the national economy that Noel could perform, including a document preparer (DOT #249.587-018) which has approximately 19,000 positions nationally, a charge account clerk (DOT #737.687-026), which has approximately 1,000 positions nationally, and a check weigher (DOT #737.687-026) which has approximately 200 positions nationally. *Id.* at 32.  The ALJ noted the Dictionary of Occupational Titles ("DOT") included conflicts or apparent conflicts due to technological advancements for those positions, the ALJ nevertheless found the use of a computer for these positions did not "affect the skill and exertional level of the occupations cited[.]" *Id.* at 32.  The ALJ then found Noel was not disabled. *Id.* at 33.

## IV.    Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the

record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *See* 42 U.S.C. § 405(g).  If the Court finds substantial evidence supports the final decision, it must uphold it.  *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)).

Not to be confusing, but the term "substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  So while it uses the word "substantial," it has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Id.*; *Biestek v. Berryhill*, 587 U.S. 97 (2019).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  An ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[ ]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705–06.  Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing.

11

*Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).  Remand is appropriate if the record is incomplete or if the ALJ's findings are incomplete and failed to "explicitly weigh all relevant, probative and available evidence" of record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (cleaned up).

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that they cannot engage in "substantial gainful activity" because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

As mentioned previously, when reviewing a claim the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability.  20 C.F.R. §§ 404.1520, 416.920.  The ALJ must determine:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe;

(3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1;

(4) whether the claimant's impairments prevent them from performing their past relevant work; and

(5) if the claimant is incapable of performing their past relevant work, whether they can perform any other work which exists in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment under steps 1 through 4. *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). If the claimant meets his burden and shows he is unable to resume previous employment, the burden shifts to the Commissioner at step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he can perform alternative substantial gainful activity. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

## V.    Discussion

Noel asserts four arguments in support of her appeal: (1) the ALJ erred when he relied on obsolete positions that do not exist in significant numbers in the economy to support a finding of not disabled; (2) the ALJ erred in relying on positions which now require the constant use of computer screens which requires skilled work and did not account for Noel's testimony that she cannot use a screen for more than 30 minutes at a time; (3) the ALJ erred in assessing the RFC by failing to include limitations due to Noel's frequent migraines; and (4) the ALJ erred in relying on limited evidence related to Noel's ability to socialize outside of the family to refute social anxiety and travel limitations in formulating the RFC. ECF No. 12 at 24-33. The Commissioner responds that the ALJ's decision is supported by substantial evidence. Each argument is addressed below.

### a. Whether the positions exist in significant numbers in the national economy and whether the VE's testimony presented an unresolved apparent conflict

Noel's first two arguments related to the VE's testimony are addressed together.  First, Noel argues the ALJ erred by relying on the positions of check weigher (200 positions in the national economy) and charge account clerk (1,000 positions in the national economy) which do not exist in substantial numbers in the national economy per the VE's testimony. ECF No. 12 at 25-26.  Second, Noel argues the positions of charge account clerk and document preparer have requirements that require the continuous use of computer screens and office lighting, and Noel cannot maintain the attention and concentration nor maintain the attendance to be present in the workplace as is required in these roles. *Id.* at 27.

Under the applicable federal regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his or her] physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b), 416.966(b).  Courts within this Circuit generally have found that 19,000 positions in the national economy is the threshold for a finding that there is a "significant number of jobs" in the national economy. *See e.g.*, *Sanchez v. Comm'r Soc. Sec.*, 705 F. App'x 95, 99 (3d Cir. 2017).

As for Noel's first argument, while she is correct that a total of 1,200 positions in the national economy would not satisfy the "significant number of jobs" benchmark, "that conclusion is irrelevant to the final determination in this case."

14

*Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 135 (3d Cir. 2021). There is substantial evidence of a significant number of jobs in one or more occupations in the national economy – namely, 19,000 document preparer jobs, 1,000 charge account clerk jobs, and 200 check weigher jobs – sufficient to uphold the ALJ's decision.

Noel's second argument – that the positions of charge account clerk and document preparer have modern requirements that Noel cannot perform under her RFC – likewise fails. "The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job." *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014) (cleaned up). Because the DOT was last updated over thirty years ago, it is common for conflicts to arise between a VE's testimony and the DOT. *Id.* at 616–17; *Jason S v. Kijakazi*, No. 4:21-CV-1598, 2023 WL 3728689, at *6 (M.D. Pa. May 30, 2023). "To ensure consistency, courts have imposed an obligation on ALJs to identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs and information in the DOT." *Zirnsak*, 777 F.3d at 617 (cleaned up). To this end, an ALJ is required to (1) ask on the record whether the VE's testimony is consistent with the DOT, (2) if an inconsistency appears, the ALJ must elicit a reasonable explanation, and (3) explain in its decision how the conflict was resolved. *Id.* (cleaned up). "An ALJ's failure to comply with these requirements may warrant remand in a particular case[, but] . . . the presence of inconsistencies does

15

not mandate remand, so long as substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." *Id.* (cleaned up).

At the hearing, the ALJ engaged in the following exchange with the VE with respect to the modern performance of the job descriptions in the DOT :

> Q:     For all of the jobs that you provided are there any inconsistencies between how the job is described in the DOT compared to how it's performed today?
>
> A:     The biggest one I should probably mention is the document preparer.  As you know over time technology has changed where the original description of t his job is included transferring documents into microfilm.  Now what this is done is they're taking paper documents and turning them into digital documents.  So they're using a scanner and a computer instead of technology to transfer the microfilm.  So in my experience though, that hasn't really changed the skill or exertional level at all.  It's still one or two step job routine work all day.  The technology has changed there.  The charge account clerk would be a similar change, you know, that they're going to be using computers to complete work tasks.  But again, it's not going to change the skill or exertional level.  It's still going to be the same tasks over and over learned in 30 days or less.
>
> Q:     And the job numbers that you provided for those - - for all those jobs, are those the jobs - - are they correct for how it's performed now?
>
> A:     Yes, sir.

ECF No. 5-2 at 64.

While Noel argues she "cannot frequently to continuously work around screens and office lighting, and cannot maintain either the attention and concentration to be on-task as required, or maintain the attendance to be present in the workplace as much as is required in these roles[,]" the ALJ did not find that she

had any such limitations in her RFC and found her self-reported limitations for screens and other mental limitations were not consistent with the medical record or did not occur with such frequency, duration or severity as to reduce Noel's RFC. *See* ECF No. 5-2 at 26-27.  The ALJ further considered the VE's testimony and determined the testimony was consistent with the DOT and/or there is a reasonable explanation for conflicts or apparent conflicts. *Id*. at 32.  The ALJ found:

> To the extent the Dictionary of Occupational Titles indicates the document preparer position includes use of microfilm, improvements in technology has changed this to making documents digital. Similarly, the charge account clerk now uses a computer. However, the vocational expert testified that such changes do not affect the skill and exertional level of the occupations cited (Hearing Transcript).  To the extent the Dictionary of Occupational Titles might not address some limitations (e.g., use a handheld assistive device; interaction with others; production rate work, quotas; adapting to changes; different types of climbing; exposure to different kinds of light), the vocational expert's testimony regarding the same is based on her professional knowledge, training, education, and experience (see, Hearing Transcript). Finding the above reasonable explanations, the undersigned accepts the testimony of the vocational expert as to the requirements of the occupations cited.

*Id*. at 32-33.  Accordingly, the ALJ elicited testimony from the VE as to whether her testimony that Noel could perform the positions was consistent with the DOT, elicited a reasonable explanation that modern use of technology in those positions did not change the skill or exertional level required and explained in his decision how he accepted the VE's testimony based on her professional knowledge, training, education and experience and thus supported his decision with substantial evidence.

Insofar as Noel argues that the use of technology transformed otherwise "unskilled" work into "semi-skilled" work, ECF No. 12 at 28, this argument is also rejected. The ALJ credited the VE's testimony that improvements of technology for the positions of document preparer and charge account clerk did "not affect the skill and exertional level" of these occupations, and Noel did not challenge this methodology at the hearing. ECF No. 5-2 at 32, 66; *Welsh v. Comm'r Soc. Sec.*, 662 F. App'x 105, 109 (3d Cir. 2016). Accordingly, the ALJ did not err by relying on the positions of check weigher and charge account clerk, nor did the VE's testimony present an unresolved apparent conflict and his decision was supported by substantial evidence.

### b. Whether the ALJ erred in assessing the RFC by failing to include limitations due to Noel's frequent migraines

Next, Noel argues the "ALJ erred in assessing the Plaintiff's residual functional capacity, failing to include limitations due to the Plaintiff's frequent recurrent migraines, including limited ability to use screens, time-off task due to pain and limited ability to concentrate or use a screen during migraines, or absences due to sever[e] migraine days." ECF No. 12 at 30. Noel argues

> The record extensively documents Plaintiff's struggles with recurrent migraines, with periods where severe, fully debilitating migraines were reduced to no less than two days per month, and less severe but still notable and distracting tension headaches occurred two, three, or four times per week. Her treating neurologist noted her migraine frequency and severity in her treating source statement, noting Plaintiff experienced moderately severe migraines which would preclude even basic work activity occurring an average of four times per month, and would result in her being off-task 25-percent of the workday, and absent two days per month. She noted these were worsened with

18

bright lights. The ALJ did not account for these limitations in the final residual functional capacity assessment. When these limitations were presented to the Vocational Expert, these limitations were material to the outcome, as the Vocational Expert stated the need to use a screen frequently, "if not constantly," in the positions identified, and that the tolerance for off-task time was only ten-percent of the workday. Likewise, absences occurring more than once per month would eliminate all available work for an individual with the Plaintiff's other limitations.

*Id*. at 31.

Fundamentally, an RFC is "the most [a claimant] can still do despite [the claimant's] limitations" and is based on all relevant evidence of record. 20 C.F.R. § 416.945(a)(1).  Relevant evidence includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001).  While the ALJ must consider relevant evidence in formulating the RFC, he need only include limitations which are credibly established. *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 163 (3d Cir. 2008).

When considering a medical opinion, an ALJ does not have to "defer or give any specific evidentiary weight, including controlling weight" to any one medical opinion, including a claimant's treating medical provider. 20 C.F.R. § 404.1520c(a). Instead, all medical opinions are evaluated for their persuasiveness based on five factors: supportability, consistency, relationship with the claimant, specialization and "other factors that tend to support or contradict" the medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5).  The two "most important factors" in determining the

19

persuasiveness of the medical opinions are consistency and supportability. 20 C.F.R. § 404.1520c(a); *Chung v. Comm'r Soc. Sec.*, No. 24-1974, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025).

While the ALJ must "articulate how [they] considered the medical opinions[,]" 20 C.F.R. § 404.1520c(a), the ALJ is not required to invoke any "magic words" in their decision. *Chung*, 2025 WL 1065241, at *3 (quoting *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). So long as the ALJ "weave[s] supportability and consistency throughout [his] analysis of which doctors were persuasive[,]" the evaluation is sufficient. *Chung*, 2025 WL 1065241, at *3 (quoting *Zaborowski*, 115 F.4th at 639). The court reviews the ALJ's decision "as a whole" and the decision need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Similarly, an ALJ must give "serious consideration to a claimant's subjective complaints" of her symptoms, "even where those complaints are not supported by objective evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993) (cleaned up). But "subjective complaints alone are not sufficient to establish a claimant's disability." *Campbell v. O'Malley*, No. 21-CV-4166, 2024 WL 1288643, at *9 (E.D. Pa. Mar. 26, 2024) (citing 20 C.F.R. §§ 404.1529(a); 416.929(a)). In assessing the credibility of a claimant's subjective complaints compared with the objective medical evidence, the "ALJ may partially or entirely reject complaints that are inconsistent with the evidence." *Id.* When a claimant's daily activities are inconsistent with

20

subjective symptoms, the ALJ may "conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible." *Burns v. Barnhart*, 312 F.3d 113, 129–30 (3d Cir. 2002). An ALJ's decision about a claimant's subjective symptoms will be upheld so long as it is supported by substantial evidence. *Biestek*, 587 U.S. 97.

In formulating her RFC, the ALJ summarized Noel's own written statements and testimony regarding her migraines and symptoms including sensitivity to bright lights, ability to view a screen for only thirty minutes at a time, and difficulty completing tasks and concentrating. ECF No. 5-2 at 24-25. However, the ALJ found that Noel's statements "concerning the intensity, persistence and limiting effects" of her reported symptoms were not "entirely consistent with the medical evidence and other evidence in the record." *Id*. at 25. The ALJ further explained medical records indicated her migraine symptoms improved with treatment and her current medication regimen was "working very well for her," *id*. at 25-26, neurological exams documented no acute distress, normal orientation, memory, and attention, *id*. at 26, she reported during medical appointments she had consistently watched television shows and movies, played computer video games, and participated in online dating, *id*., she was independent in self-care, prepared her own meals, performed some household chores, managed her finances, was able to read, and drove a car. *Id*. at 23. Thus, the ALJ adequately articulated why he found the extent of her self-reported symptoms inconsistent with the overall record.

21

While Noel does not provide the name of her "treating neurologist" nor cite to any "treating source statement" in this portion of her brief, the Court assumes Noel is referring to Dr. Kovacik-Eicher, as she appears to be the only treating neurologist of record. *See* ECF No. 12 at 16, 18. Dr. Kovacik-Eicher opined Noel experienced approximately four headaches per month that were made worse with bright lights and noise, that the symptoms would interfere with Noel's attention and concentration 25% or more of the time and absent about 2 days per month. ECF No. 5-2 at 29. The ALJ found this opinion unpersuasive. *Id.* The ALJ stated:

> The undersigned does not find this opinion persuasive because it is inconsistent with and without substantial support from the record as a whole (please see preceding paragraphs). Medical records show that the claimant's migraines improved with treatment (see e.g., treatment records from Nov. 2022 noting her current medication regimen was "working very well for her"; treatment records from Jul. 2022 noting her migraines have been less overall since starting Botox; treatment records from Dec. 2021 indicating she was doing well on a regimen of Emgality and Topamax; and treatment records from May 2021 noting a reduction in headaches) (*see e.g.,* Exhibit 9F/12, 20, 40, 51; 16F/7). The undersigned also finds that the claimant is less limited considering her activities. While she stated she could only view a screen for about 30 minutes due to her migraines, evidence the medical records indicated that she binge watched Star Trek; that she had been playing a game called "Goodville"; that she had been watching her favorite movies and shows; and that she spent the weekend watching movies with her mother (Exhibits 6F/146; 13F/25; 18F/15, 92, 127, 167; see also, Exhibit 18F/4 indicating the claimant "recently quit the discord channel and guild she was playing on"). While she complained of cognitive difficulties, mental status examinations often documented intact memory, insight, and cognitive abilities (*see e.g.,* Exhibits 6F, 8F, 9F, and 18F). Further, the claimant indicated in medical records that she was able to spend the night at her friend's house; go to a haunted house for her birthday; and spend the weekend with friends, "going out to eat and having a bonfire" (Exhibits 10F/10; 18F/29, 92, 106, 113, 127). These activities are inconsistent with the claimant's statements about the intensity, persistence, and limiting effects of her symptoms.

22

*Id.*

The Court finds the ALJ adequately evaluated the supportability and consistency of Noel's statements together with Dr. Kovacik-Eicher's opinion and therefore finds no error.

First, the ALJ adequately analyzed the supportability factor which requires the ALJ consider "the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source." *Stark v. Dudek*, No. 2:24-CV-1464, 2025 WL 1736485, at *4, n. 2 (W.D. Pa. June 23, 2025) (quoting *Cota v. Kijakazi*, 21-cv-672, 2022 WL 3686593, at *5 (M.D. Pa. Aug. 25, 2022)). *See also* 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)...the more persuasive the medical opinions ...will be." 20 C.F.R. § 404.1520c(c)(1).

The ALJ found Dr. Kovacik-Eicher's opinion unpersuasive because it was not supported by the medical record showing her treatment regimen for migraines was working. The ALJ instead credited other medical opinions which found she had symptomatic improvement for her migraines, and he credited Noel's subjective complaints in assessing additional limitations to the RFC – just not to the extent that Noel reported. ECF No. 5-2 at 28-31. "The presence of evidence in the record that supports a contrary conclusion" from the ALJ's ultimate determination "does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x

23

761, 764 (3d Cir. 2009).  The fact that the ALJ did not find Dr. Kovacik-Eicher's

opinion wholly persuasive and did not fully credit the extent of Noel's subjective

complaints does not undermine his conclusion that these opinions and testimony

were unpersuasive.  In fact, the ALJ did consider Noel's physical and mental

impairments with respect to her migraines and considered both her subjective

symptoms and mental and physical examinations in his decision and it is supported

by substantial evidence. ECF No. 5-2 at 28-31.

### c. Whether the ALJ erred in relying on limited evidence related to Noel's ability to socialize outside of the family to refute social anxiety and travel limitations in formulating the RFC

Finally, Noel argues the ALJ cherry-picked instances in which Noel reported

socializing outside of her family to determine she had no limitations for social

anxiety and travel limitations in formulating the RFC. ECF No. 12 at 32-33.  Noel

argues the record indicated she only had limited social activity and otherwise

indicated she had "fluctuating severe mental and physical symptoms." *Id*. at 33.

Again, an ALJ's decision to credit and weigh the extent of a claimant's

subjective complaints must be supported by substantial evidence and an ALJ has

wide discretion to make this determination. *Van Horn v. Schweiker*, 717 F.2d 871,

873 (3d Cir. 1983).  Here, the ALJ did not "cherry pick" instances of social activity

in formulating the RFC.  He sufficiently evaluated the medical record as a whole,

the persuasiveness of Noel's own subjective complaints, and the persuasiveness of

each medical opinion.  He then compared those opinions to the evidence of record

and imposed physical and mental limitation in the RFC and sufficiently explained

his decision to impose or not impose the limitations as established by the evidence. The ALJ did not just support his finding with Noel's ability to socialize outside of her family – he considered the record as a whole and found:

> In terms of the alleged mental impairments, the record shows that the claimant received mental health treatment during the period under adjudication (including therapy and medications such as Clonazepam, Trazodone, Vistaril, and Pristiq), as well as case management and home health. At times, mental status examinations documented "abnormal" mood (depressed, anxious, "tearful at times"); below average recent and remote memory; limited awareness; and subjective complaints of hallucinations (Exhibits 8F, 13F, and 18F). However, mental status examinations also documented "normal" mood and affect; good eye contact; cooperativeness; good grooming; normal speech and language; normal orientation; logical thought processes; no abnormal associations; normal attention, concentration, memory, and cognitive functioning; normal fund of knowledge; and intact judgment and insight (Exhibits 5F, 6F, 7F, 8F, 9F, 11F, 13F, 15F, 16F, and 18F). While the record includes complaints of multiple psychiatric symptoms, medical records indicate that the claimant's mental impairments generally improved with treatment (see e.g., treatment records from Nov. 2023 indicating the claimant was responding well to therapy; treatment records from Aug. 2023 noting she felt well managed on her current medication regimen; treatment records from May 2023 noting her depression improved; treatment records from Oct. 2022 noting that Pristiq had made a significant difference in her depression and that the claimant had been going out on a daily basis and driving to different locations; treatment records from Jun. 2022 noting the claimant felt "great" since restarting Topamax; treatment records from May 2022 noting the claimant felt much better since she started taking 100mg of Vistaril; treatment records from Apr. 2022 noting her sleep was "amazing"; treatment records from Feb. 2022 noting she was doing well on her current medication regimen; treatment records from Aug. 2021 noting that her current medication regimen and therapist contributed to her progress; and treatment records from Jul. 2021 noting the claimant was doing well on her current medication regimen) (Exhibits 8F/13, 33, 41, 45, 76, 80; 13F/12; 18F/48, 93, 100, 172).

ECF No. 5-2 at 26-27.

25

The ALJ found the state agency psychologists' opinions that Noel could perform a range of unskilled work persuasive, but she was less limited in light of her activities, treatment and because her mental status examinations generally documented cooperativeness, good eye contact, normal speech and language. ECF No. 5-2 at 29-30. He also observed that Noel's mental impairments improved with treatment. *Id.* The ALJ also found she was less limited because her mental status examinations documented appropriate hygiene and grooming, normal behavior and intact judgment and that she was able to prepare her own meals, complete some household chores and manage her own finances. *Id.* at 30. The ALJ considered her mental limitations in formulating her RFC by limiting "understanding, remembering, and carrying out detailed but uninvolved written or oral instructions; work duties and any changes being explained, written and/or demonstrated and being learned in 30 days or less; no strict production rates such as assembly line work or hourly time quotas; [and] frequent interaction with others[.]" ECF No. 5-2 at 27. The Court finds no error with the ALJ's analysis in formulating the RFC and finds his decision was supported by substantial evidence.

## VI.   Conclusion

For the foregoing reasons, the final decision of the Commissioner denying Noel's claim is AFFIRMED. Noel's motion for summary judgment is DENIED. An appropriate Order follows.

DATED this 30th day of June, 2026.


BY THE COURT:


s/Christopher B. Brown
United States Magistrate Judge